## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDGARDO SANTIAGO ORAMA;** **JULIO COLÓN RIVERA;** his spouse, **ZULMARY RODRÍGUEZ ROMÁN**; and the Conjugal Partnership Comprised by them | |
| **PLAINTIFFS** | |
| **v.** | |
| **PUERTO RICO ELECTRIC POWER AUTHORITY**; | |
| **MIGUEL CORDERO LÓPEZ** in his personal capacity; | |
| **LUIS APONTE ZAYAS** in his personal capacity; | |
| **RAFAEL TORRES CHÁVEZ**  in his personal capacity; | |
| **JOSUÉ COLÓN ORTÍZ**, in his personal capacity; | Civil No. |
| **GUSTAVO CABRERA SANTOS** in his personal capacity; | **CIVIL RIGHTS VIOLATION**, **JURY TRIAL DEMAND** |
| **OTONIEL CRUZ CARRILLO** in his personal capacity and in his official capacity as PREPA's interim Executive Director | |
| **JORGE GARCÍA CRUZ** in his personal capacity and in his official capacity as Administrator of  PREPA's Illicit Use of Energy Division | |
| **ABRAHAM GARCÍA ROMÁN** in his personal capacity and in his official capacity as Advisor to PREPA's Director of Consumer Affairs; | |
| **JOHN DOE** and **JANE ROE** in their personal capacities, as persons who were personally involved but whose name or identities are unknown to the plaintiffs at this time; | |
| **INSURANCE COMPANY ABC** | |
| **DEFENDANTS** | |

## COMPLAINT

**COME NOW** the plaintiffs, through the undersigned attorneys, and respectfully **STATE**, **ALLEGE** and **PRAY** as follows:

### JURISDICTIONAL STATEMENT

1.       This is a civil action filed by two employees of the Commonwealth of Puerto Rico's Electric Power Authority ("PREPA") who have been demoted and subjected to a work situation unreasonably inferior to the norm for their career positions.  The adverse actions taken against the plaintiffs are not premised on any justified reason, but rather constitute blatant discriminatory acts taken by defendants, all members of the New Progressive Party ("NPP"), to punish plaintiffs for their well known political adherence to the Popular Democratic Party ("PDP"). Defendants have in fact engaged in a methodical pattern of institutional discrimination, with total disregard and abuse for plaintiffs' rights as career position public employees at PREPA. Through this discernible pattern, defendants have  slowly but steadily stripped plaintiffs'  supervisory executive level functions, to the point where at present plaintiffs are basically low level clerks who mostly receive consumer's telephone complains about the electric service.

2.       Plaintiffs assert a violation of their rights under the First Amendment, due process and equal protection clauses of the Constitution of the United States, as well as under the laws and Constitution of Puerto Rico, and pray for equitable relief in the form of ceasing of all actions attempted directly or indirectly to demote plaintiffs and to have them perform clerical duties not consistent with their management level career positions at PRPA, and legal relief in the form of economic and punitive damages, pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1983.  As

this is a civil action brought pursuant to the laws and Constitution of the United States, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.     This Court also has supplemental jurisdiction over all claims arising under the laws and Constitution of Puerto Rico pursuant to 28 U.S.C. § 1367.

4.     Venue is proper under 28 U.S.C. § 1391(b).

### THE PARTIES

5.     Plaintiff  Edgardo Santiago Orama is of legal age, resident of Puerto Rico and a citizen of the United States of America.  He lives in Toa Baja, Puerto Rico.

6.     Plaintiff Julio Colón Rivera is of legal age, resident of Puerto Rico and a citizen of the United States of America.  He lives in Humacao, Puerto Rico.

7.     Plaintiff Colón Rivera is married to plaintiff Zulmary Rodríguez Román, and together they form a Conjugal Partnership.  She joins this complaint as to all causes of action arising under the laws and Constitution of Puerto Rico.

8.     Defendant Puerto Rico Rico Electric Power Authority is a corporate entity, created by the Laws of the Commonwealth of Puerto Rico, and which operates as a sole supplier of energy to the Commonwealth of Puerto Rico and charges for said services and profits from such operations in a fashion similar to that of an entity which is dedicated to said services.

9.     Defendant Miguel Cordero López was, at most times relevant to this complaint, PREPA's Executive Director. He is sued in personal capacity.

10.     Defendant Luis Aponte Zayas, at times relevant to this complaint, held a trust position in PREPA, as Advisor to the Generation and Transmission Directorate. He is sued in personal capacity.

3

11.     Defendant Rafael Torres Sánchez, at times relevant to this complaint, held a career position at PREPA, as Officer of Security. He is sued in personal capacity.

12.     Defendant Josué Colón Ortíz, at times relevant to this complaint, held a trust position at PREPA, as Director of Generation and Transmission. He is sued in personal capacity.

13.     Defendant Gustavo Cabrera Santos, at times relevant to this complaint, held a trust position in PREPA, as Aide to then Executive Director Miguel Cordero. He is sued in personal capacity.

14.     Defendant Otoniel Cruz Carillo is brought in his personal capacity and in his official capacity as PREPA's interim Executive Director.

15.     Defendant Jorge García Cruz is brought in his personal capacity and in his official capacity as Administrator of PREPA's Illicit Use of Energy Division

16.     Defendant Abraham García Román is brought in his personal capacity and in his capacity as Advisor to PREPA's Director of Consumer Affairs

17.     Defendants John Doe and Jane Roe are persons who were personally involved with the discriminatory acts alleged herein, but whose names or identities are unknown to the plaintiffs at this time.

18.     Defendant Insurance Company ABC had at times relevant an insurance policy issued in defendants' favor, that provides complete or partial coverage as to the claims herein asserted by plaintiffs against defendants.

## STATEMENT OF FACTS

19.     Plaintiffs Edgardo Santiago Orama and Julio Colón Rivera are active members of the Popular Democratic Party (hereinafter "PDP"), fact known to defendants at all times relevant to this action.

4

20.     Plaintiff Santiago Orama's active membership in the PDP includes, without limitation, open and visible participation in PDP activities and membership in the organization "Popular Energy" (comprised by PREPA employees who are PDP sympathizers), which turned him into a known political PDP activist among PREPA and those who work therein. He was also the subject of a political discrimination complaint by two NPP'ers, a fact that is widely known among PREPA former and current employees and officers.

21.     Plaintiff Colón Rivera's active membership in the PDP includes, without limitation, open and visible participation in PDP activities and membership in the organization "Popular Energy" (comprised by PREPA employees who are PDP sympathizers), which turned him into a known political PDP activist among PREPA and those who work therein. same as co-plaintiff Santiago Orama, Colón Rivera was the subject of a political discrimination complaint by two NPP'ers, a fact that is widely known among PREPA former and current employees and officers. He also occupied a trust position under the PDP administration.

22.     Plaintiff Santiago Orama started working at PREPA on April 4, 1987, and has occupied various career positions therein from then to the present. Until the 2009 change in governmental administration, Santiago Orama had (because of his merit) steadily escalated positions at PREPA. On September 23, 2007, plaintiff Santiago Orama was appointed to a career position as Supervisor of Corporate Security, after having served in said position on an interim basis for about two years.

23.     Plaintiff Colón Rivera started working at PREPA on September 16, 2002, in a career position (Coordinator of Security operations). Plaintiff Colón Rivera came to occupy in 2005, during the PDP administration, a trust supervisory position, as Administrator of the Security Office. On July 2008, plaintiff Colón Rivera was appointed to the career supervisory

position of Supervisor of Security, position that he occupied at the time in which the NPP governmental administration came into power.

24.     Just after the NPP won the 2008 general elections, in late 2008, plaintiff Santiago Orama began to receive email communications by three employees that he supervised, Joseph Figueras, Luinel Torres and Osvaldo Negrón, all active and openly militant members of the NPP. Through said communications, these three NPP activists told Santiago Orama, their supervisor, that the supervisor-supervised relationship that they had had to that moment should be deemed ended for all purposes.

25.     Joseph Figueras in particular made at that time derogatory comments regarding plaintiff Santiago Orama's exercise of supervisory duties, and copied all communications to other executive employees at PRPA who were openly identified with the NPP. In some of the email communications by Figueras to plaintiff Santiago Orama after the elections, Figueras used blue font, to give them a harassing political connotation.

26.     During the PDP administration, from 2006 until 2008, both Joseph Figueras and Luinel Torres had been the subject of internal personnel investigations, based on alleged misconduct and insubordination. Plaintiff Santiago Orama was in charge of the investigation against Figueras and the first of two investigations against Torres. A second investigation against Torres was conducted by also herein plaintiff Colón Rivera.

27.     Both Figueras and Torres filed suit against Santiago Orama and Colón Rivera in federal court, claiming discrimination based on political affiliation. The complaint by Figueras and Torres alleged that they are NPP'ers, and that they were discriminated against by herein plaintiffs Santiago Orama and Colón Rivera, both PDP'ers.

28.     After the change of governmental administration, both Figueras and Torres were appointed to supervisory positions at PREPA, as part of a settlement of their complaint against herein plaintiffs Santiago Orama and Colón Rivera. The details of the settlement are unknown to plaintiffs, but the fact that the complaint was indeed settled under the new governmental administration is evidence that the new PREPA officers that came into power, including defendant Miguel Cordero (then Executive Director), had knowledge of plaintiffs Santiago Orama and Colón Rivera's political affiliation and of their supposed engagement in discriminatory acts towards NPP'ers during the PDP administration.

29.     As to Osvaldo Negrón, now retired, plaintiff Santiago Orama was in charge of a 2007 investigation, based upon sexual harassment allegations against Negrón by a female co-worker. Charges were filed against Negrón as a result of the investigation, and a settlement was eventually reached as per which Negrón was reprimanded.

30.     In a work meeting held prior to the elections, on June 4, 2008, Negrón threatened both plaintiff Santiago Orama and plaintiff Colón Rivera that he (Negrón) had been eight years in the lower part of the wheel ("en la rueda de abajo"), and that, if the NPP prevailed in the 2008 elections, he would make himself sure that both plaintiff Santiago Orama and Colón Rivera came to know "how does it feel" being in that lower part of the wheel.

31.     On February 17, 2009, just about a month after the new NPP governmental administration came into power, plaintiffs Santiago Orama and Colón Rivera received a letter from then Executive Director Miguel Cordero López, notifying that the Office of Corporate Security had been eliminated, due to alleged economical reasons.

32.     These alleged economic reasons turned out to be a sham, as defendant Miguel Cordero, then Executive Director, created about a year later the Special Investigations Office, to

which the same duties previously performed by the Office of Corporate Security were assigned. Cordero also engaged Mr. René Berlingeri, an NPP militant, as a professional consultant to the "new" office, at the tune of around $100,000 anually. All in all, the same work is done at a much higher cost, but now with employees and a consultant that are NPP inconditionals.

33.    In deciding to eliminate the Office of Corporate Security upon pretextual economic reasons and later creating an analogous office but with different personnel, defendant and then Executive Director Miguel Cordero sought to eliminate from said sensitive office employees identified as PDP activists, such as the plaintiffs Santiago Orama and Colón Rivera.

34.    On June 28, 2009, plaintiff Santiago Orama was transferred to PREPA's facilities in Monacillos, Rio Piedras, supposedly to exercise duties as Officer of Security. This transfer, signed by defendant Cordero, constituted a demotion, as plaintiff in this new role and venue had no personnel supervision duties. Also, although plaintiff Santiago Orama was assigned to work in detecting employees that made illicit use of licenses obtained through the Workmen's Insurance Fund, plaintiff Santiago Orama could not adequately perform said duty, as no resources or subordinates were assigned to that end, whereas before Santiago Orama was assigned to the task, around 16 employees worked on it.

35.    This transfer was authorized by defendant Cordero López as a first step to fully strip Santiago Orama's from his authority and prerogatives as a management level employee at PREPA and punish him for his political beliefs, in a context where all involved knew that Santiago Orama had been sued by NPP'ers because he allegedly discriminated against them during the past PDP governmental administration.

36.    Even though plaintiff had been demoted from his supervisory duties, he still exercised some duties proper to the Officer of Security position, such as supervising the

operation and maintenance of the security systems installed in  generation plants, electrical substations, technical centers and commercial offices. However, on June 4, 2010, herein defendant Luis Aponte Zayas, member of the NPP who then held a trust position as advisor to the Generation and Transmission Directorate, cited plaintiff Santiago Orama to a meeting, wherein plaintiff Santiago Orama was informed that he had been stripped of these supervisory functions as well. It is important to note that plaintiff Santiago Orama had exercised these functions island wide since March 2003.

37.    This further stripping of Santiago Orama's functions and authority was perpetrated and executed by defendant Aponte Zayas, with defendant Cordero López' authorization and acquiescence, as a further step to fully strip Santiago Orama's from his authority and prerogatives as a management level employee at PREPA and punish him for his political beliefs, in a context where all involved knew that Santiago Orama had been sued by NPP'ers because he allegedly discriminated against them during the past PDP governmental administration.

38.    Also on June 2010, PREPA, through defendant Aponte Zayas, invited (with all expenses paid) all but two former Office of Security officers to attend a training for facility security officers to be held at Loiza's Rio Mar hotel during June 13-18. Not surprisingly, and obviously for political reasons, the only two former Office of Security officers that were not invited nor allowed to participate were the two plaintiffs herein, Edgardo Santiago Orama and Julio Colón Rivera.

39.    After plaintiff Santiago Orama came from vacations on July 2010, he was assigned to work on the Workmen's Compensation Fund investigations for three weeks. Afterwards, from the end of July 2010 to October 29, 2010, he received no further job

assignments from Aponte Zayas or from others, and thus was left, for all practical purposes, without functions during said period.

40.     Around October 2010, defendant Gustavo Cabrera Santos, another of the security officers that are adamant NPP'ers and that had been under plaintiff Santiago Orama's supervision during the PDP administration, was appointed to a trust position as an aide to then Executive Director and herein defendant Miguel Cordero. Not surprisingly, Cabrera is an intimate friend of Figueras, Torres and Negrón, all individuals with politically based grudges against herein plaintiffs Santiago Orama and Colón Rivera.

41.     Shortly after Cabrera's appointment to a trust position, on October 29, 2010, plaintiff Santiago Orama was notified that he would be transferred to the Office of Illicit Use of Electric Power, under the Client Service Division ("Oficina de Uso Indebido de Energía Eléctrica, División de Servicio al Cliente"). At the time of the appointment, plaintiff Santiago Orama's direct supervisor was Luis Sánchez Correa, NPP activist who at one time was fined by the Ethics Office upon a finding that he was forcing employees to buy tickets to political activities. The transfer communication was signed by herein defendant and then Executive Director Miguel Cordero.

42.     This further stripping of Santiago Orama's functions and authority was perpetrated and executed by defendant Cabrera Santos, with defendant Cordero López' authorization and acquiescence, as a further step to fully strip Santiago Orama's from his authority and prerogatives as a management level employee at PREPA and punish him for his political beliefs, in a context where all involved knew that Santiago Orama had been sued by NPP'ers because he allegedly discriminated against them during the past PDP governmental administration.

10

43.     Since being transferred to the Client Service Division, plaintiff Santiago Orama has been given practically no duties beyond clerical tasks, such as answering the phone to disgruntled consumers, accompanying regional illicit use of energy investigators (as a mere observer) to visit reported sites, data entry and the like. He has also being assigned from time to time to provide security as a guardian in administrative hearings, a task that does not even appear in his job description. This situation continues as to this date.

44.     Herein defendant Jorge García Cruz, a staunch NPP activist who holds a trust position as PREPA's Administrator of the Illicit Use of Energy Division, has been Santiago Orama's supervisor since Santiago Orama  was transferred to the Client Services Division. Also acting as supervisor and instruction giver, although his position is Advisor to PREPA's Director of Consumer Affairs, is NPP activist and herein defendant Abraham García Santiago. Both of these individuals, along with other defendants as detailed herein and with the acquiescence and participation of past Executive Director Cordero López and current Executive Director Otoniel Cruz Carrillo, have purposely given to plaintiff Santiago Orama only menial clerk-type tasks, in a deliberate attempt to punish plaintiff because of his political beliefs and because of the perception that plaintiff discriminated against NPP'ers during the PDP administration.

45.     As to defendant and current interim Executive Director Otoniel Cruz Carillo, besides acquiescing and participating in the scheme to keep plaintiff Santiago Orama (and plaintiff Colón Rivera, as detailed below) from performing management functions as punishment for Santiago Orama's political beliefs, he also participated actively in structuring and recommending the two sham reorganizations that ocurred in PREPA during times relevant to this complaint, and that resulted in stripping of management functions against the plaintiffs.  These

"reorganizations" were just pretextual, intended to accomodate NPP sympathizers in better positions and to punish staunch PDP'ers such as plaintiffs because of their political beliefs.

46.     The assignement for plaintiff Santiago Orama to work as a guardian in administrative hearings was done by defendant Gustavo Cabrera, this after Mr. Luis Velázquez, Cabrera's close friend, had told herein plaintiffs Santiago Orama and Colón Rivera that they were having an easy time ("guisando") at the Office of Illicit Use of Electric Power, and that he "would see to that". The guardian assignment has been used as a means to humiliate and harass herein plaintiffs, who are derogatorily called "guardians" in a joking tone during the hearings, and given menial tasks. These security assignments had been previously assigned to a private security company.

47.     Plaintiff Santiago Orama has also been put to work in a small cubicle, where photocopiers, files and materials are also stored, with inadequate illumination and poor ventilation.

48.     It is obvious that the duties now performed by Santiago Orama are not proper executive level duties, but rather constitute "inferior to the norm" working conditions. Moreover, according to PREPA's collective bargaining agreement, these duties should be performed by union employees.

49.     Merit principle considerations have been completely disregarded time and time again by defendants in dealing with plaintiff Santiago Orama, as others with less merit, less qualifications and less years of service have been assigned meaningful executive level tasks solely because they are considered to be NPP sympathizers.

50.     In fact and in specific, the tasks previously performed by Santiago Orama have been assigned to others with less merit, less qualifications and less years of service solely

12

because they are considered to be NPP sympathizers and activists. Examples of this are the following: (a) the supervision of security systems task duties performed by Santiago Orama were assigned to Mr. Ariel Rodríguez, a union employee coming from the Storage Division; this particular assignment also violates internal policies and norms of the AEE; and (b) the Workmen's Compensation Fund investigations have been assigned to Mr. Luis Ramos Cruz, who holds a career position as Trainer in the Palo Seco Training Center.

51.     Plaintiff Santiago Orama has unsuccessfully attempted to remediate the obvious discrimination treatment pattern to which he has been subjected, through both verbal and written communications. The last written communication to that effect, dated August 8, 2011, was directed to herein defendant and then Executive Director Miguel Cordero, and again voiced plaintiff Santiago Orama's complain that he has been since 2009 the subject of a discrimination pattern devised to punish him for his political beliefs.

52.     Thus, due to defendants' intentional actions, plaintiff Santiago Orama, an employee with over two decades of public service at PREPA,  has now come full circle. From being an executive supervisory employee who engaged in delicate, complex and often risky tasks pertaining to security, he has been reduced to no more than a customer services representative who answers phone complains and enters data into computers. As one of the NPP'ers who was once under his charge predicted, defendants have indeed made themselves sure that Santiago Orama be in "the lower end of the wheel", constantly suffering demeaning treatment solely because he is identified as a staunch PDP'er who somehow needs to be tough a lesson in discriminatory politics.

53.     As to plaintiff Colón Rivera, from the February 23, 2009 memo eliminating the Office of Corporate Security until June 2009, he was kept for all practical purposes in an

institutional limbo, in which he supposedly was still a supervisor, but had no employees that were under his instructions nor fixed duties.

54.     During that period (February – June 2009), defendants Rafael Torres Chávez and defendant Luis Aponte Zayas, both known NPP activists, directly acted to undermine plaintiff Colón Rivera's supervisory authority. Among other conduct directed to harm plaintiff Colón Rivera's supervisory authority, Torres Chávez and Aponte instructed employees that in hierarchy responded to plaintiff Colón Rivera not to follow plaintiff Colón Rivera's directives. Torres Chávez and Aponte also assigned tasks to this employees, thus bypassing and ignoring plaintiff Colón Rivera and the authority of his position.

55.     An example of this ocurred in March 2009, when defendant Torres Chávez told a subordinate named Martín Soto that he did not have to inform plaintiff Colón Rivera of his (Soto's) whereabouts, and that if Colón Rivera had any concerns with that he could rot in hell ("que se vaya pal carajo").

56.     During that period (February – June 2009), defendant Torres Chávez held the position of Officer of Security, a position that was lower in hierarchy to that then occupied by plaintiff Colón Rivera. Torres Chávez is a known and active member of the NPP, who participates in partisan activities and who openly voices his political adherence. In fact, Torres Chávez specifically told plaintiff Colón Rivera, on or about 2007, that he voted NPP in the general elections. The context was that Torres Chávez was complaining to plaintiff Colón Rivera, then a trust high level executive employee under the PDP administration, that he (Torres Chávez) was supposedly being bypassed for positions because of his political adherence.

57.     During that period (February – June 2009), defendant Aponte Zayas held the trust position of Technical Advisor to herein Josué Colón Ortíz, then Director of Generation and

14

Transmissions, who responded directly to the Executive Director. Aponte Zayas is a known and active member of the NPP, who participates in partisan activities and regularly has occupied trust positions under the NPP administration.

58.     During that period (February – June 2009), plaintiff Colón Rivera attempted to obtain a response from defendant Josué Colón Ortíz as to plaintiff's duties and supervisory prerogatives. Plaintiff Colón Rivera was told by defendant Josué Colón that there were excedent positions in security, and that future relocations would be done. Josué Colón also hinted to plaintiff Colón Rivera that he would not remain in security, because there were to many employees in that area.

59.     This stripping of Colón Rivera's functions and authority was perpetrated and executed by defendants Aponte Zayas and Torres Sánchez, with defendants  Josué Colón and Cordero López' authorization and acquiescence, as a further step to fully strip plaintiff Colón Rivera from his authority and prerogatives as a management level employee at PREPA and punish him for his political beliefs, in a context where all involved knew that Colón Rivera had been sued by NPP'ers because he allegedly discriminated against them during the past PDP governmental administration.

60.     On June 15, 2009, plaintiff Colón Rivera was notified that he had been stripped of his supervisory duties, and transferred to Humacao under the supervision of Engineer Beaucheamp. The transfer was authorized by and notified through communication to that effect signed by defendant Miguel Cordero, then Executive Director.

61.     On June 23, 2009, plaintiff Colón Rivera filed an administrative internal grievance, challenging the decision to strip him of his supervisory duties. This administrative case is still ongoing.

62.     From this time to October 2010, plaintiff Colón Rivera was in an institutional limbo, in which he had no specific assignments or job duties but engaged in miscellaneous tasks.

63.     On October 20, 2010, amidst rumors that he was going to be yet again transferred, plaintiff Colón Rivera called defendant Gustavo Cabrera, who then occupied a trust position as an aide to then Executive Director and herein defendant Miguel Cordero. Defendant Cabrera told plaintiff Colón Rivera that it was possible that he (Colón Rivera) would be transferred the Office of Illicit Use of Electric Power, located in Santurce. After Colón Rivera complained about the distance difference from Humacao to Santurce and about the difficulties that the transfer would pose to him (because he was presiding the Caguas Chapter of the Executive Employees' Association), defendant Cabrera told him that "it could be worse". Cabrera also added that he (Cabrera) had suffered burdensome and unwanted changes during Colón Rivera's PDP administration but never complained about it, and added that he was aware that Colón Rivera had supposedly made unjust changes to affect Cabrera's "good friend" Osvaldo Negrón. The communication ended in a heated and hostile tone.

64.     On November 10, 2010, plaintiff Colón Rivera recieved official notification that he was being transferred from Humacao to Santurce, to the Office of Illicit Use of Electric Power, under the Client Service Division ("Oficina de Uso Indebido de Energía Eléctrica, División de Servicio al Cliente"). In commuting time only, this represents a difference of at least two hours daily against plaintiff Colón Rivera. Although the letter was signed by then Executive Director and herein defendant Cordero, it was copied to defendant Cabrera.

65.     Since being transferred to the Client Service Division, wherein he reunited with herein co-plaintiff Santiago Orama, plaintiff Colón Rivera has been given practically no duties beyond clerical tasks, such as answering the phone to disgruntled consumers, accompanying

16

regional illicit use of energy investigators (as a mere observer) to visit reported sites, data entry and the like.  Same as plaintiff Santiago Orama, he has also being assigned from time to time to provide security as a guardian in administrative hearings, a task that does not even appear in his job description. This situation continues as to this date.

66.     Herein defendant Jorge García Cruz, a staunch NPP activist who holds a trust position as PREPA's Administrator of the Illicit Use of Energy Division, has been Colón Rivera's supervisor since Colón Rivera  was transferred to the Client Services Division. Also acting as supervisor and instruction giver, although his position is Advisor to PREPA's Director of Consumer Affairs, is NPP activist and herein defendant Abraham García Santiago. Both of these individuals, along with other defendants as detailed herein and with the acquiescence and participation of past Executive Director Cordero López and current Executive Director Otoniel Cruz Carrillo, have purposely given to plaintiff Colón Rivera only menial clerk-type tasks, in a delibarate attempt to punish plaintiff because of his political beliefs and because of the perception that plaintiff discriminated against NPP'ers during the PDP administration.

67.     As to defendant and current Advisor to PREPA's Director of Consumer Affairs Abraham García Santiago, besides acquiescing and participating in the scheme to keep plaintiff Colón Rivera (and plaintiff Santiago Orama, as detailed above) from performing management functions as punishment for Colón Rivera's political beliefs, he has made every effort possible to harm and discredit plaintiff Colón Rivera among his peers, even attempting to remove plaintiff from the presidency of PREPA's Management Employees Association, Caguas Chapter.

68.     The assignement for plaintiff Colón Rivera to work as a guardian in administrative hearings was done by defendant Gustavo Cabrera, this after Mr. Luis Velázquez, Cabrera's close friend, had told herein plaintiffs Santiago Orama and Colón Rivera that they

were having an easy time ("guisando") at the Office of Illicit Use of Electric Power, and that he "would see to that". The guardian assignment has been used as a means to humiliate and harass herein plaintiffs, who are derogatorily called "guardians" in a joking tone during the hearings, and given menial tasks. These security assignments had been previously assigned to a private security company.

69.     Plaintiff Colón Rivera has also been put to work in a small cubicle, where photocopiers, files and materials are also stored, with inadequate illumination and poor ventilation.

70.     It is obvious that the duties now performed by Colón Rivera are not proper executive level duties, but rather constitute "inferior to the norm" working conditions. Moreover, according to PREPA's collective bargaining agreement, these duties should be performed by union employees.

71.     Merit principle considerations have been completely disregarded time and time again by defendants in dealing with plaintiff Colón Rivera, as others with less merit, less qualifications and less years of service have been assigned meaningful executive level tasks solely because they are considered to be NPP sympathizers.

72.     In fact and in specific, the tasks previously performed by Colón Rivera have been assigned to others with less merit, less qualifications (colón Rivera holds a master's degree) and less years of service solely because they are considered to be NPP sympathizers and activists.

73.     Plaintiff Colón Rivera has unsuccessfully attempted to remediate the obviously discrimination treatment pattern to which he has been subjected, through both verbal and written communications. The last written communication to that effect, dated August 8, 2011, was directed to herein defendant and then Executive Director Miguel Cordero, and again voiced

plaintiff Rivera Colón's complain that he has been since 2009 the subject of a discrimination pattern devised to punish him for his political beliefs.

74.     On September 23, 2011, plaintiff Colón Rivera had a verbal altercation with herein defendant Gustavo Cabrera Santos. Cabrera Santos then told plaintiff Colón Rivera, in no uncertain terms and in a hostile tone that seemed close to an agression, that the personnel changes affecting him (Colón Rivera) were being done by the NPP governmental administration to punish Colón Rivera for his past actions as supervisor under the PDP administration. Defendant Cabrera Santos also told plaintiff Colón Rivera to be warned that all personnel actions taken by Cabrera Santos against him (Colón Rivera) and other PDP'ers had defendant Miguel Cordero's (then Executive Director) approval and acquiescence.

75.     Plaintiff Colón Rivera complained about this incident through a letter directed to defendant Miguel Cordero, in which plaintiff Colón Rivera requested an administrative investigation. Not surprisingly, no response was ever received and no investigation whatsoever was conducted.

76.     Thus, due to defendants' intentional actions, plaintiff Colón Rivera, an employee with ten years of public service at PREPA who holds a Master's degree,  has now come full circle. From being an executive supervisory employee who engaged in delicate, complex and often risky tasks pertaining to security, he has been reduced to no more than a customer service representative who answers phone complains. As one of the NPP'ers who was once under his charge predicted, defendants have indeed made themselves sure that Rivera Colón be in "the lower end of the wheel", constantly suffering demeaning treatment solely because he is identified as a staunch PDP'er who somehow needs to be taught a lesson in discriminatory politics.

77.     Defendants, either intentionally or with deliberate indifference, wanted to humiliate  plaintiffs and purposely demoted plaintiffs with their actions.

78.     It is political affiliation that motivated and continues to motivate all of the defendants actions and/or they are being deliberately indifferent to the discriminatory acts perpetrated on the plaintiff.

79.     The defendants, acting separately and collectively, either willfully or negligently, have caused the plaintiffs' economic and emotional harm.

80.     All of defendants' actions are merely a pretext to politically discriminate against the plaintiffs.

81.     If they are not stopped, this discriminatory practice will continue thereby requiring this Honorable Court's immediate intervention.

82.     The defendants' acts of discrimination have caused the plaintiffs material injury, that must be properly redressed through this proceeding.

### FIRST CAUSE OF ACTION:
### VIOLATION OF FIRST AMENDMENT/ DUE PROCESS /EQUAL
### PROTECTION RIGHTS UNDER THE UNITED STATES CONSTITUTION

83.     Plaintiffs repeat and incorporate all the allegations contained thus far as if set forth fully herein.

84.     The foregoing evidences that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiffs' rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States (freedom of speech and association; due process; and equal protection)

85.     As a result of the Defendants' unconstitutional and illegal conduct, including conspiring to do so, plaintiffs have been discriminated against and caused irreparable and

continuing harm, emotionally, economically and in their civil rights, in the amount of no less than $1,000,000.00 each.   In addition, the plaintiffs pray for preliminary and permanent injunctive relief, in the form of immediate reinstatement to duties proper to their career positions and not inferior to the norm, and prohibiting defendants from taking additional adverse employment actions because of plaintiffs' political affiliation to the Popular Democratic Party.

86.   Also, because the defendants have acted with deliberate indifference towards Plaintiffs' constitutional rights, plaintiffs are entitled to punitive damages in the amount of no less than $1,000,000.00.

87.   Plaintiff Colón Rivera's spouse Zulmary Rodríguez Román, as well as the conjugal partnership formed by Colón Rivera and Rodríguez Román, have also suffered damages stemming from defendants' discriminatory and/or tortious conduct, which entitles them to compensation in the amount of no less than $500,000.00.

## SECOND CAUSE OF ACTION:
## LAWS AND CONSTITUTION OF PUERTO RICO

88.   Plaintiffs repeat and incorporate all the allegations contained thus far as if set forth fully herein.

89.   The foregoing evidence that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiffs' rights action under the Constitution and laws of the Commonwealth of Puerto Rico, specifically Sections 1, 4, 6 and 7 of Article II of the Constitution of Puerto Rico; the Public Service Personnel Laws of Puerto Rico and merit system regulations, i.e. Law No. 184 of August 3, 2004, as amended and applicable jurisprudence; and Articles 1802 and 1803 of the Civil Code, § 5141-5142 of Title 31.

90.     As a result of the Defendants' unconstitutional and illegal conduct, plaintiff has been subjected to adverse employment actions, and caused irreparable and continuing harm, emotionally, economically and in their civil rights, in the amount of no less than $1,000,000.00 each.

91.     Plaintiff Colón Rivera's spouse Zulmary Rodríguez Román, as well as the conjugal partnership formed by Colón Rivera and Rodríguez Román, have also suffered damages stemming from defendants' discriminatory and/or tortious conduct, which entitles them to compensation in the amount of no less than $500,000.00.

## JURY DEMAND.

92.     Trial by Jury is requested in all causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully pray that the Court:

1.     Find that the defendants have violated Plaintiffs' rights under the first amendment, the due process and equal protection clauses of the United States Constitution; as well as under the laws and Constitution of Puerto Rico;

2.     Grant preliminary and permanent injunction restoring plaintiffs to functions proper to their career positions and not inferior to the norm; and prohibiting, restraining and enjoining, the defendants, agents or anyone acting in concert with them or pursuant to their orders; or their successors in any representative capacity from violating any Constitutional and statutory rights of the plaintiffs, including the performance of their supervisory duties;

3.     Award damages to Plaintiffs in an amount no less than $1,000,000.00  to each for pain and suffering, and other damages suffered as a result of the defendants' unconstitutional conduct;

22

4.      Award punitive damages to plaintiffs in an amount of no less than $1,000,000.00 for each, or in such amount as may be deemed appropriate;

5.      Award damages to plaintiff Colón Rivera's spouse Zulmary Rodríguez Román, as well as the conjugal partnership formed by Colón Rivera and Rodríguez Román, in the amount of no less than $500,000.00.

6.      Award pre judgment interest;

7.      Award plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C.§1988; and

8.      Award such other and further relief as may be deemed just and proper.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this October 28th , 2011.

**Counsel for Plaintiffs:**

**LANDRÓN & VERA, LLP**
Attorneys at Law
Centro Internacional de Mercadeo
100 Carr. 165, Torre I, Suite 203
Guaynabo, Puerto Rico 00968
Tel.: (787) 774-5959
Fax: (787) 774-8181

S/ Eileen Landrón Guardiola
**EILEEN LANDRÓN GUARDIOLA**
USDC-PR-203006
elandron@landronvera.com

S/ Eduardo Vera Ramírez
**EDUARDO VERA RAMÍREZ**
USDC-PR-209713
evera@landronvera.com

S/ Luis Rodríguez Muñoz
**LUIS RODRÍGUEZ MUÑOZ**
USDC-PR-214511
lrodriguez@landronvera.com

23